IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LILLIAN PECKO | : | |
| | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY | : | NO. 16-1988 |
| | : | |
| *Defendant.* | : | |

PRATTER, J.                                                                                          NOVEMBER 7, 2016

MEMORANDUM

Lilian Pecko sued Allstate Insurance Company for (i) breach of contract and (ii) bad faith pursuant to 42 Pa.C.S. § 8371, alleging that Allstate failed to fulfill its contractual obligation to fully compensate her for damage caused by an explosion and resulting fire. Because the record evidence is not sufficient to sustain either a breach of contract claim or a bad faith claim, the Court will grant Allstate's Motion for Summary Judgment.

I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

On February 5, 2014, an explosion and resulting fire at Ms. Pecko's home (the "Property") caused damage to the Property and its contents. At the time of the explosion, the Property was covered by a homeowner's policy issued by Allstate. After Allstate was notified of the loss in late February 2014, Allstate representative Larry Miller inspected the Property and estimated the replacement cost of Ms. Pecko's dwelling damages to be approximately $36,000. On March 13, 2014, Allstate issued a payment of nearly $24,000 after accounting for recoverable

---

[1] All facts are undisputed unless otherwise stated, in which case they are interpreted in the manner most favorable to Ms. Pecko.

depreciation.[2] In April 2014, a separate Allstate representative estimated the replacement value of Ms. Pecko's personal property to be nearly $79,000. Allstate made a payment of over $43,000 after accounting for recoverable depreciation and the policy's $500 deductible.

An Allstate employee informed Ms. Pecko on March 18, 2014 that her policy covered additional living expenses ("ALE") for the shortest of: (i) "[t]he time period required – using due diligence – to repair or replace the property"; (ii) "[t]he time period required for [Ms. Pecko] to permanently relocate elsewhere"; or (iii) "12 months." Mot. for Summ. J. Ex. D at 120, Ex. C at 13 (Doc. No. 18). This correspondence also informed Ms. Pecko that Allstate believed that Ms. Pecko would be able to restore the Property to its pre-loss condition by May 13, 2014. Allstate then issued a $7,200 ALE payment to cover Ms. Pecko's housing expenses through May 31, 2014. In September 2014, a representative from the office of Blaine Jesus (Ms. Pecko's public claim adjuster) contacted Allstate requesting ALE to cover the months of June, July, August, and September. Allstate then issued a $2,200 ALE payment to cover Ms. Pecko's temporary housing costs for June 2014, despite Allstate's stance that the repairs could have been completed in two months (e.g., by May 31, 2014).

Ms. Pecko initiated this action on February 4, 2016 by filing a Writ of Summons in the Court of Common Pleas, Philadelphia County. On April 27, 2016, and after Ms. Pecko filed a Complaint and an Amended Complaint, Allstate removed this action to federal court. Ms. Pecko filed a Motion to Remand, which this Court denied. Currently pending before the Court are Allstate's Motion to Dismiss and Motion for Summary Judgment.[3]

---

[2]   Allstate issued an additional payment of approximately $12,000 at the end of September 2014 representing the recoverable depreciation on the dwelling claim.

[3]   The arguments presented in connection to the Motion to Dismiss are substantively identical to the arguments presented in connection to the Motion for Summary Judgment.

**II.     LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it could reasonably affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Summary judgment is appropriate if the non-moving party fails to rebut the movant's assertion(s) by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Under Rule 56, the court must view the evidence presented in the motion in the light most favorable to the opposing party, in this instance, Ms. Pecko. *Anderson*, 477 U.S. at 255.

---

Because the Court will grant the Motion for Summary Judgment after a review of the evidentiary record, the Motion to Dismiss is moot.

**III.   DISCUSSION**

    **A.**   **Breach of Contract**

"Pennsylvania law recognizes as valid suit limitation clauses in insurance policies." *Prime Medica Assocs. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1156 (Pa. Super. 2009) (citing cases). Failure to abide by a contractual suit limitation clause will serve to bar a plaintiff's claim for breach of contract. *Lardas v. Underwriters Ins. Co.*, 231 A.2d 740, 742 (Pa. 1967); *see also Gen. State Auth. v. Planet Ins. Co.*, 346 A.2d 265, 267-68 (Pa. 1975). However, "[w]here the insurer has by its actions led a policyholder to believe that the one-year bar will not be asserted, traditional concepts of waiver or estoppel" can be applied to excuse an otherwise untimely lawsuit. *Evans Prods. Co. v. W. Am. Ins. Co.*, 736 F.2d 920, 927 (3d Cir. 1984) (Adams, J. dissenting). "Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Prime Medica*, 970 A.2d at 1157 (quoting *Samuel J. Marranca Gen. Contracting Co. v. Amerimar Cherry Hill Assocs. Ltd. P'ship*, 610 A.2d 499 (Pa. Super. 1992)). Equitable estoppel applies when a party justifiably relies to its detriment on another's "promise implied by . . . words, deeds or representations." *Id.* (quoting *Kreutzer v. Monterey Cty. Herald Co.,* 747 A.2d 358, 361 (Pa. 2000)). A plaintiff claiming the benefits of waiver or estoppel "must establish a factual basis to assert the defense of waiver or estoppel." *Id.* Accordingly, to prevail on a waiver or estoppel defense, a plaintiff must present "'reasonable grounds for believing that the time limit would be extended' or that the insurer would not strictly enforce the suit limitation provision." *Id.* (quoting *McMeekin v. Prudential Ins. Co. of Am.*, 36 A.2d 430, 432 (Pa. 1944)).

Allstate argues that Ms. Pecko's breach of contract claim cannot survive summary judgment because (i) it is barred by the one-year suit limitation contained in Ms. Pecko's insurance policy[4] and (ii) Ms. Pecko has put forth no evidence that would meet her burden to develop a factual basis to support waiver or estoppel. Ms. Pecko responds that the Court should preclude Allstate from enforcing the suit limitation provision because Allstate (i) continued to negotiate and adjust her claim up to and beyond the one year anniversary of the loss and (ii) did not notify her about the suit limitation in violation of the Pennsylvania Unfair Claims Settlement Practices Regulations ("UCSPR"). The Court will address each of Ms. Pecko's arguments in turn.

1. Continued Negotiation and Adjustment

Ms. Pecko does not dispute that Pennsylvania courts enforce contractual one-year statute of limitations clauses contained within insurance policies. Rather, Ms. Pecko argues that the Court should preclude Allstate from asserting a statute of limitations defense because it continued to negotiate and adjust her claim for over one year, which induced Ms. Pecko to believe that it would not enforce the policy's suit limitation provision. In support of this argument, Ms. Pecko cites *Swan Caterers, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 12-24, 2012 WL 5508371 (E.D. Pa. Nov. 13, 2012) for the proposition that estoppel applies where an insurer "suggested a possibility of settlement to the insured or asked the insured not to file suit." Opp. Mot. for Summ. J. at 6 (Doc. No. 21).

The evidentiary record before the Court does not support a waiver or estoppel defense. Ms. Pecko has not presented any evidence (i) that Allstate suggested a possibility of settlement,

---

[4] The policy contains a provision stating "No suit or action may be brought against [Allstate] unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage." Mot. for Summ. J. Ex. C at 20.

5

(ii) that Allstate asked her not to file suit, (iii) showing how Allstate continued to negotiate and adjust her claim, or (iv) showing that she justifiably relied on any statements or actions by Allstate that "induced" her to believe Allstate would not enforce the contractual suit limitation. The only relevant evidence put forth by Ms. Pecko are an October 2014 email chain where Allstate states its reasons for denying Ms. Pecko additional coverage and a May 2015 email from Allstate to Mr. Jesus reaffirming its denial of additional coverage. Ms. Pecko has presented no evidence of any communication between Allstate and Ms. Pecko and/or her agents between October 2014, four months prior to the expiration of the one year limitations period, and May 2015, three months after the expiration of the limitations period. This evidence does not suggest a continued effort by Allstate to negotiate and adjust Ms. Pecko's claim. Furthermore, Ms. Pecko's son[5] testified at his deposition that he was not aware of the one year suit limitation contained in the policy or of any actions by Allstate that would have induced Ms. Pecko to believe Allstate would not enforce the suit limitation.

Accordingly, there is no evidence to support Ms. Pecko's allegation that Allstate took any actions to induce her into believing it would not assert the suit limitation provision.

### 2. Violation of the UCSPR

Ms. Pecko argues that Allstate's alleged violation of the UCSPR—by failing to inform her of the suit limitation—should preclude Allstate from being able to enforce the suit limitation.[6] The regulations state:

---

[5] The parties have stipulated that Ms. Pecko "has no knowledge of the loss beyond the initial discovery of the loss and she will not be testifying at any proceeding in this matter, including but not limited to, any Court proceeding and/or Trial." Mot. for Summ. J. Ex. G. Accordingly, Allstate deposed Ms. Pecko's son, who had greater knowledge of the alleged losses.

[6] Pennsylvania enacted the UCSPR to help implement the Unfair Insurance Practices Act ("UIPA"). *Swan Caterers*, 2012 WL 5508371, at *8. Allstate argues that because Pennsylvania

> Insurers may not continue negotiations for settlement of a claim directly with a claimant who is neither an attorney nor represented by an attorney until the rights of the claimant may be affected by a statute of limitations or a policy or contract time limit, without giving the claimant written notice that the time limit may be expiring and may affect the rights of the claimant. The notice shall be given to first-party claimants 30 days, and to third-party claimants 60 days, before the date on which the time limit may expire.

31 Pa. Code § 146.7(e). Ms. Pecko asserts that because she is neither an attorney nor was she represented by an attorney at the time, Allstate's actions violated § 146.7(e).

Ms. Pecko does not cite any case law, and the Court has not been able to identify any case law, that would support Ms. Pecko's contention that an alleged violation of the UCSPR can serve to bar an insurer's ability to enforce a suit limitation. Even if a violation of the UCSPR could serve to bar an insurer's ability to enforce a suit limitation provision, Ms. Pecko has failed to present evidence that § 146.7(e) applies to the facts of this case. First, the regulation refers to an insurer continuing settlement negotiations with the insured. As discussed above, Ms. Pecko has not presented any evidence that she was in settlement negotiations with Allstate in the four months leading up to the expiration of the suit limitation period. Second, the regulation contemplates negotiations "directly with a claimant." Ms. Pecko has presented no evidence Allstate communicated directly with her; the record evidence demonstrates that Allstate communicated only with Ms. Pecko's public claim adjuster. As such, Ms. Pecko has failed to present facts that would support a violation of § 146.7(e).

Because the UCSPR does not operate to save Ms. Pecko's breach of contract claim, the Court will turn to traditional principles of contract law. Pennsylvania law is clear that "[o]ne who is about to sign a contract has a duty to read that contract first. . . . To accept [the] argument

---

law does not recognize a private right of action for violations of the UIPA or the UCSPR, *see id.*, the alleged violation is not relevant to the breach of contract claim. Ms. Pecko, however, has not asserted a claim pursuant to the UCSPR. Rather, Ms. Pecko seeks to use the alleged violation as evidence supporting her waiver and estoppel argument.

that there is such a duty to inform . . . would essentially abrogate the law of Pennsylvania regarding plaintiff's duty to read." *Schillachi v. Flying Dutchman Motorcycle Club*, 751 F. Supp. 1169, 1174-75 (E.D. Pa. 1990). In the context of an insurer's responsibility to inform an insured of a suit limitation provision, courts in this District have held that there is no such obligation under Pennsylvania law. *See Swan Caterers*, 2012 WL 5508371 at *5 ("[Insurer] is under no obligation to remind policyholders of the suit limitation clause contained within the insurance policy."); *Waldman v. Pediatric Servs. of Am., Inc.*, No. 97-7257, 1998 WL 770629, at *8 (E.D. Pa. Nov. 5, 1998) (finding insurer had no obligation to inform insured of one-year suit limitation contained in insurance policy (citing *Lardas*, 231 A.2d at 741)).

\*    \*    \*

As there is no dispute that the date of Ms. Pecko's loss was February 5, 2014, and this action was not initiated until February 4, 2016, the contractual one-year suit limitation bars Ms. Pecko's breach of contract claim.

### B. Bad Faith Claim

Allstate argues that Ms. Pecko's bad faith claim cannot survive summary judgment because Ms. Pecko has failed to present any evidence to support the claim. To establish a bad faith claim pursuant to 42 Pa.C.S. 8371, "a plaintiff must demonstrate that the insurer (1) lacked a reasonable basis for denying benefits and (2) knew or recklessly disregarded its lack of a reasonable basis." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 598 (E.D. Pa. 2010) (citing *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 193 (Pa. 2007)). Allegations of mere negligence or bad judgment will not suffice, but rather, a plaintiff is required to "show that the insurer breached its duty of good faith through some motive of self-interest or ill will." *Id.* (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (2004)). Any claim for bad faith

must ultimately be supported by clear and convincing evidence. *Swan Caterers*, 2012 WL 5508371 at *5; *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994). The Third Circuit Court of Appeals has explained that:

> [w]hile an insurer has a duty to investigate claims fairly and objectively, an insurer may defeat a bad faith claim by showing that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action. *See J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 367 (3d Cir. 2004) ("A reasonable basis is all that is required to defeat a claim of bad faith.").

*Luse v. Liberty Mut. Fire Ins. Co.*, 411 F. App'x 462, 465 (3d Cir. 2011) (internal citation omitted).

In opposing Allstate's Motion for Summary Judgment, Ms. Pecko appears to base her bad faith claim on two arguments: that Allstate (i) knew the policy covered certain damages yet purposefully denied her coverage and (ii) violated the UCSPR by failing to notify her of the suit limitation. Ms. Pecko, however, cannot establish bad faith by clear and convincing evidence.

First, Ms. Pecko principally relies on the argument that Allstate purposefully declined to pay for a replacement boiler unit that Allstate knew was covered under the policy. Ms. Pecko's son testified at his deposition that "[i]t was unreasonable that my mom believed that the heater would be covered and it wasn't. They led her on." Mot. for Summ. J. Ex. H 54-56. There is no evidence, however, that Allstate ever insinuated that it would pay to replace the boiler unit or that Allstate's decision to do so was unreasonable. Rather, the evidence shows that (i) Mr. Miller's March 2014 damages estimate stated that payment would be made to "clean," not replace, the boiler unit, Mot. for Summ. J. Ex. D at 15; (ii) Mr. Miller relayed to Mr. Jesus in October 2014 that Allstate would not pay for damage to the boiler itself, Mot. for Summ. J.

9

Ex. D. at 426; and (iii) Allstate reaffirmed its decision not to pay for the boiler in May 2015 after being contacted by Mr. Jesus, Mot. for Summ. J. Ex. D. at 210.[7]

Second, Ms. Pecko cannot save her bad faith claim by alleging a dispute of fact as to whether or not Allstate violated § 146.7(e) of the UCSPR.  Violations of the UCSPR are "admissible and relevant to support claims of bad faith," but they "are not *per se* violations of the bad faith standard."  *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 244 F. App'x 424, 435 n.5 (3d Cir. 2007) (citing *Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1128, 1233 (Pa. Super. 1994)).  A plaintiff's allegation that an insurer violated the UCSPR, without more, does not amount to clear and convincing evidence.  *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 576-77 (E.D. Pa. 2000).  Here, for the reasons stated above with regard to Ms. Pecko's breach of contract claim, the record evidence does not support Ms. Pecko's contention that Allstate violated the UCSPR.  Accordingly, Ms. Pecko's bad faith claim must fail.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Allstate's Motion for Summary Judgment.

\*   \*   \*

---

[7]   At oral argument, Ms. Pecko's counsel argued that Allstate summarily dismissed an expert report pertaining to the boiler unit and that such action constitutes bad faith.  The evidence does not support this argument.  First, the only expert report in the record provides no opinion as to the cause of the damage to the boiler; it merely opined that fixing the boiler would cost more than replacing it.  *See* Mot. for Summ. J. Ex. I.  Second, the October 2014 email exchange between Allstate and Mr. Jesus reflects that Allstate did consider Ms. Pecko's request to have her boiler replaced, but that Allstate determined that the damage to the boiler was not caused by an event covered by the policy.  *See* Mot. for Summ. J. Ex. D at 426.

An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE